IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GERALD E. MOODY, M.D.,

        Plaintiff,

                           CIVIL ACTION NO.

v.                         1:05-CV-2337-JEC

P. MICHAEL SKALIY, MD.,
Individually and as Trustee
of the P. MICHAEL SKALIY,
M.C., P.C., 401(k) PROFIT
SHARING PLAN & TRUST,

        Defendants.

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

**MAR 27 2007**

JAMES N. HATTEN, Clerk
By. _____
                    Deputy Clerk

## O R D E R  &  O P I N I O N

This case is presently before the Court on defendants' Motion for Summary Judgment [53], plaintiff's Motion to Compel Discovery [57], plaintiff's Motion to Compel Information Pursuant to a Third-Party Subpoena [62], plaintiff's Motion to Seal Documents [66] and Amended Motion to Seal Documents [70], and plaintiff's Motion to File Affidavit of Bruce Bergherm and Sur-Reply [77]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [53] should be **GRANTED**, plaintiff's Motion to Compel Discovery [57] should be **DENIED**, plaintiff's Motion to Compel Information Pursuant to a Third-Party Subpoena [62] should be **DENIED**,

plaintiff's Motions to Seal Documents [66], [70] should be **GRANTED** as amended, and plaintiff's Motion to File Affidavit of Bruce Bergherm and Sur-Reply [77] should be **GRANTED**.

### BACKGROUND

The essential facts underlying this case are not in dispute. Plaintiff is a former employee of defendant P. Michael Skaliy, M.D., P.C. ("Skaliy, P.C."), a small anesthesia practice. (Defs.' Statement of Undisputed Facts ("Defs.' Facts") [53] at ¶ 1.) Skaliy, P.C. administered two ERISA-covered pension plans for the benefit of its employees: 1) The P. Michael Skaliy, M.D. Money Purchase Pension Plan & Trust; and 2) The P. Michael Skaliy, M.D., P.C. 401(k) Profit Sharing Plan and Trust (collectively, "the Plan"). (*Id.* at ¶¶ 7-8.) During the relevant time period, Skaliy, P.C. funded the Plan through discretionary contributions.[1] (Moody Dep. at 98-100 and Exs. 9-10.)

Plaintiff became eligible to participate in the Plan at the beginning of 2001. (Defs.' Facts [53] at ¶ 7.) During the 2001 calendar year, Skaliy, P.C. contributed $35,000 to the Plan on behalf of plaintiff. (*Id.*) These contributions were in addition to

---

[1] Plaintiff disputes this fact, but it is supported by his own testimony and other documentary evidence in the record, including at least one exhibit to the Complaint. (Moody Dep. at 99 and Exs. 9-10; Compl. at Ex. F.) Neither the affidavit nor the deposition testimony cited by plaintiff conflicts with defendants' characterization of the contributions as "discretionary employer" contributions.

AO 72A
(Rev.8/82)

plaintiff's salary, pursuant to his employment agreement, of $150,000 per year.  (*Id.* at ¶ 3.)

In November, 2001, plaintiff entered into an amended employment agreement with Skaliy, P.C.  (*Id.* at ¶ 4.)   The amended agreement provided for payment in the amount of 35% of the "net income" of the practice.[2]  (*Id.* at ¶ 5; Moody Dep. at Ex. 6.)   "Net income" was defined to include the aggregate patient revenues of Skaliy, P.C., minus the operating expenses of the practice, including expenses directly attributable to plaintiff such as fringe benefits.  (Defs.' Facts [53] at ¶ 5.)  Thus, under the amended pay arrangement, Skaliy, P.C.'s contributions to the Plan on behalf of plaintiff reduced the amount of plaintiff's take-home pay.  (*Id.*)

Shortly  after  executing the amended employment agreement, plaintiff informed defendant, Dr. Michael Skaliy, that he no longer wanted  to  participate  in  the  Plan.    (Moody  Dep.  at  Ex.  12.) Specifically, plaintiff wrote a letter to Skaliy stating:

In reviewing my financial planning with my accountant a retirement account looks less attractive through 2010, especially one invested in stocks.  Therefore effective immediately I do not wish to make any further contributions to my retirement fund.

(*Id.*)

Several months later, plaintiff formalized his request in a

---

2    Plaintiff began receiving 45% of the net income of the practice on September 1, 2002.  (Pl.'s Resp. to Defs.' Facts [64] at ¶ 5.)

AO 72A
(Rev.8/82)

letter to Dr. Skaliy and Skaliy, P.C. stating:

> This letter is my official request to opt out of P. Michael Skaliy M.D., P.C. Money Purchase Pension Plan and Michael Skaliy M.D., P.C. Profit Sharing Plan.  I understand that this is irrevocable and I will not be eligible to reenter any retirement plan such as Money Purchase Pension Plan or Profit Sharing Plan from January 1, 2002. I understand that I will be withdrawn from the plans as of January 1, 2002, and am not eligible for any retirement type plan after December 31, 2001.

(Moody Dep. at Ex. 13.)  Upon receipt of this letter, Skaliy, P.C. granted plaintiff's request and issued plaintiff a check in the amount of $9,315.38, representing the contributions designated for deposit into the Plan on behalf of plaintiff during 2002, plus interest.  (*Id.* at Ex. 14; Defs.' Facts [53] at ¶ 17.)

In May, 2003, Skaliy, P.C. lost its contract to perform anesthesiology services at Northside Hospital.  (Defs.' Facts [53] at ¶ 21; Pl.'s Resp. to Defs.' Facts [64] at ¶ 21.)  As a result, Skaliy, P.C. terminated plaintiff's employment.  (*Id.*)

Approximately a year after his termination, plaintiff sent a letter to Skaliy, P.C. claiming that he was entitled to Plan benefits for the years 2002 and 2003, and to accelerated vesting of his benefits for 2001.  (Moody Dep. at Ex. 21.)  Skaliy, P.C. denied plaintiff's claim, finding that:  1) plaintiff had expressly waived any benefits after January 1, 2002, and 2) plaintiff was not entitled to accelerated vesting of his 2001 benefits.  (*Id.* at Exs. 22, 24.)

4

Plaintiff subsequently filed this ERISA action.  (Compl. [1].)  In his Complaint, plaintiff asserts claims for:  1) ERISA benefits and damages pursuant to 29 U.S.C. § 1132(a)(1)(B); 2) breach of ERISA-imposed fiduciary duties under 29 U.S.C. § 1132(a)(1)(A); and 3) statutory penalties for failure to provide ERISA-governed information pursuant to 29 U.S.C. § 1132(c)(1).  (Id. at 12-13.)

Defendants have filed a motion for summary judgment on all of plaintiff's claims.  (Defs.' Mot. for Summ. J. [53].)  Plaintiff has filed several related motions, including two motions to compel discovery and a motion to submit an affidavit in response to the motion for summary judgment.  (Pl.'s Mots. to Compel [57] and [62]; Pl.'s Mot. to File Aff. of Bruce Bergherm and Sur-Reply [77].)  Plaintiff has also filed a motion to submit certain documents under seal.  (Pl.'s Mot. to File Documents Under Seal [66].)  All of these motions are presently before the Court.

## DISCUSSION

### I.  Plaintiff's Motion to Seal Documents

Plaintiff has filed a motion to seal numerous documents submitted in opposition to defendants' motion for summary judgment.  (Pl.'s Mot. to Seal Documents [66] and Amended Mot. to Seal Documents [70].)  Defendants did not respond to the motion, but the Court issued an Order requiring plaintiff to show cause why these pleadings

5

should be filed under seal.  (Order [72].)  In response, plaintiff indicated that at least one of its pleadings directly addresses documents covered by a protective order governing confidential material produced by a non-party, Northside Hospital.  (Pl.'s Resp. to Show Cause Order [76].)  However, plaintiff acknowledged that several of the documents cited in his motion to seal, including two affidavits and a motion and supporting brief to exceed a page limitation, do not contain confidential material.  (*Id.*)  Plaintiff explained that his request to file these documents under seal was inadvertent.  (*Id.*)

After reviewing the relevant documents, the Court agrees with plaintiff that its **response to defendants' motion for summary judgment** implicates the parties' protective order and **should remain under seal.**  Accordingly, plaintiff's motion to seal this pleading is **GRANTED.**  The remaining documents, which were inadvertently included in plaintiff's motion, should be unsealed.

## II.  Defendants' Motion for Summary Judgment

### A.    Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

6

to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried

7

his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

**B.   Plaintiff's Claim for ERISA Benefits**

In Count I of his Complaint, plaintiff asserts a claim for ERISA benefits under 29 U.S.C. § 1132(a)(1)(B). (Compl. [1] at ¶¶ 19-24.) Specifically, plaintiff seeks: 1) Plan benefits from January 1, 2002 until his termination in 2003; and 2) full vesting of benefits invested in the Plan on plaintiff's behalf in 2001. (*Id.*; Moody Dep. at Exs. 21 and 23.) Skaliy, P.C., the Plan administrator, denied plaintiff's claim and his appeal. (Moody Dep. at Exs. 22 and 24.) The question for the Court is whether to uphold Skaliy, P.C.'s decision.

The Supreme Court has established three standards for reviewing a plan administrator's decision to deny benefits under a plan governed by ERISA: 1) *de novo* where the plan does not grant the

8

administrator discretion; 2) arbitrary and capricious where the plan grants the administrator discretion; and 3) heightened arbitrary and capricious where the plan grants the administrator discretion but the administrator operates under a conflict of interest. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989) and *Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1134 (11th Cir. 2004) (applying the principles announced in *Firestone*). The plan at issue in this case grants Skaliy, P.C. broad discretion "to construe the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan." (Compl. [1] at Ex. C, § 2.4.) However, it appears that plaintiff's claim for benefits, if successful, would be paid out of Skaliy, P.C.'s own assets.[3] Accordingly, the less deferential heightened arbitrary and capricious standard is applicable. *See Buce v. Allianz Life Ins. Co.,* 247 F.3d 1133, 1139-41 (11th Cir.

---

[3] The parties have not provided much guidance to the Court on this issue. Defendants suggest that it is undisputed that the arbitrary and capricious standard applies. (Defs.' Mot. for Summ. J. [53] at 12, n.5.) Plaintiff counters that the appropriate standard is heightened arbitrary and capricious review because there is a conflict of interest. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 4.) However, the facts that plaintiff cites in support of applying heightened review--Dr. Skaliy's individual diversion of funds allegedly due Skaliy, P.C. pursuant to an unrelated contract with Northside Hospital--do not indicate a conflict of interest with respect to plaintiff's claim for ERISA benefits. Nevertheless, as it appears from the record that there is at least a potential conflict of interest, the Court applies heightened arbitrary and capricious review.

2001)(noting that heightened arbitrary and capricious review is appropriate where a claim must be paid out of the administrator's "own coffers").

Applying the heightened arbitrary and capricious standard, the Court must first determine whether, under a *de novo* standard of review, Skaliy, P.C.'s decision is legally correct. *Williams,* 373 F.3d at 1138. If so, the court's inquiry ends and the decision is affirmed. *Id.* If not, the Court must determine whether the decision is not only wrong, but "arbitrary and capricious," i.e., not supported by reasonable grounds. *Id. See also, Brucks v. Coca-Cola Co.,* 391 F.Supp. 2d 1193, 1202 (N.D. Ga. 2005)(Duffey, J.) (applying *Firestone* and *Williams*). Under the heightened review that applies when there is a conflict of interest, the degree of deference due at the second stage of the inquiry is "significantly diminished." *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1568 (11th Cir. 1990).

### 1.    Plaintiff's Claim to Benefits During 2002-2003

Skaliy, P.C. determined that plaintiff was not entitled to any benefits during 2002 or 2003, because plaintiff opted out of the Plan effective January 1, 2002. (Moody Dep. at Ex. 24.)  The undisputed facts in the record support this decision.

Upon the advice of his accountant, plaintiff determined in early 2002 that it would be financially advantageous for him to opt out of

10

the Plan.  (Moody Dep. at Ex. 1.)  Thereafter, plaintiff submitted an

official written request stating in no uncertain terms that he:  1)

wanted to opt out of the Plan; and 2) understood that he would be

withdrawn from the Plan as of January 1, 2002.  (*Id.* at Ex. 13.)

Skaliy, P.C. processed the request, withdrawing plaintiff from the

Plan and immediately distributing to plaintiff all of the Plan funds

that had been set aside on his behalf during 2002.  (*Id.* at Ex. 16.)

Thus, by virtue of his own request, plaintiff was not entitled to

accrue, and is not entitled to recover, ERISA benefits during 2002 or

2003.

Plaintiff's argument that his request was technically invalid,

and therefore void, is unpersuasive. (*See* Pl.'s Resp. to Defs.' Mot.

for Summ. J. [67] at 9; Compl. [1] at Ex. C.)  The Plan expressly

permits participants to opt out, providing that:

An Employee may, subject to the approval of the Employer, elect
voluntarily not to participate in the Plan.  The election not to
participate must be irrevocable and communicated to the Employer, in
writing, within a reasonable period of time before the beginning of
the first Plan Year.

(*Id.*)  It is true that plaintiff's request was not submitted within

the time frame contemplated by the above language, i.e., before the

beginning of the first Plan Year.  However, there is no restriction

against a plan administrator waiving such a deadline.  *See Nazay v.*

*Miller,* 949 F.2d 1323, 1336 (3rd Cir. 1991)(recognizing that a plan

administrator    was    authorized    but    not    required    to    waive    a

11

certification requirement) and *Fletcher v. Tufts Univ.*, 367 F.Supp. 2d 99, 117 (D. Mass. 2005)(noting that the administrator "'could have,' but did not waive" a time restriction). Although Skaliy, P.C. may not have been required to process plaintiff's untimely request, it certainly was not prohibited from doing so.

In any case, plaintiff's request, whether timely or not, effectively waived his claim to Plan benefits during 2002 and 2003. Waivers are enforceable in the ERISA context, although they are closely scrutinized to ensure that there has been a "knowing and voluntary relinquishment of an ERISA-protected benefit." *See Smart v. Gillette Co. Long-Term Disability Plan,* 70 F.3d 173, 181 (1st Cir. 1995)("Congress did not go so far as to prohibit an employee from waiving her right to participate in an employee welfare benefit plan.") and *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360, 1366 (2d Cir. 1991)("an individual generally may waive the right to participate in a pension plan governed by ERISA"). Plaintiff's express and unequivocal request to opt out of the Plan, and his corresponding acknowledgment that he "was not eligible for any retirement type plan after December 31, 2001," withstands careful scrutiny. (Moody Dep. at Ex. 13.)

Having determined that Skaliy, P.C.'s benefits decision was correct under a *de novo* standard, the Court notes that the decision necessarily survives heightened arbitrary and capricious review.

12

Accordingly, defendants' motion for summary judgment on plaintiff's claim for ERISA benefits during 2002 and 2003 is **GRANTED**.

### 2.    Plaintiff's Claim that His 2001 Benefits are Fully Vested Due to a Partial Termination

Skaliy, P.C. also denied plaintiff's claim that the benefits he accrued in 2001, when he participated in the Plan, were fully vested as a result of a "partial termination."   (Moody Dep. at Ex. 24.) Section 8.2 of the Plan provides that:   "Upon any full or partial termination [of the Plan], all amounts credited to the affected Participants' Combined Accounts shall become 100% Vested and shall not thereafter be subject to forfeiture."[4]   (Compl. [1] at Ex. C, § 8.2.)   Plaintiff argues that § 8.2 was triggered when Skaliy, P.C. terminated plaintiff's employment in connection with its loss of the Northside Hospital contract in 2003. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 23.)

Section 8.2 is included in the Plan to comply with a provision of the Internal Revenue Code designed to prevent an employer from obtaining a tax windfall at the expense of unvested employees.   *See Matz v. Household Int'l Tax Reduction Inv. Plan,* 388 F.3d 570, 575-76 (7th Cir. 2004)(Posner, J.) (citing § 411(d)(3) of the Internal Revenue Code)).   Provided certain requirements are met, the interest

---

[4]   Without the operation of a partial termination, plaintiff's 2001 benefits would be 40% vested pursuant to the Plan's graded vesting schedule.   (*See* Compl. [1] at Ex. E, p.7.)

13

and other earnings on retirement plans are not taxed as they accrue. *Id.* at 572. The termination of a plan therefore creates the possibility of a tax windfall when accrued but unvested contributions, having enjoyed the favorable tax treatment incident to being invested in a retirement plan, revert to the employer. *Id.* The Revenue Code avoids this result by requiring immediate vesting of all accrued benefits in the event of a plan termination, whether partial or complete. *Id.* at 573. Hence § 8.2 of the Plan, providing for 100% vesting of all benefits in the event of "any full or partial termination." (Compl. [1] at Ex. C, § 8.2.)

The Plan does not define "partial termination." Treasury Regulations and related case law indicate that an employer's termination of a significant number of employees, and their consequent exclusion from participation in a plan, may constitute a "partial termination." *See* 26 C.F.R. § 1.411(d)-2(b)(1) and *Taylor v. Food Giant, Inc. Salaried Employees Pension Plan,* 1984 WL 8144 * 2 (N.D. Ga. 1984). In the event that a group of employees is terminated, a partial termination is likely if: 1) the terminated employees' exclusion has a significant effect on the plan; or 2) the employer's decision appears to be motivated by the potential actuarial and tax benefits of the employees' termination. *See Kreis v. Charles O. Townley, M.D. & Assoc., P.C.,* 833 F.2d 74, 79 (6th Cir. 1987) and *Taylor,* 1984 WL 8144 at * 2-3.

14

The record in this case does not support a partial termination. Besides plaintiff, the only other employee arguably terminated in connection with the loss of the Northside Contract in 2003 was Dr. Bergherm.[5]   However, it is undisputed that Dr. Bergherm never participated in the Plan. (See Defs.' Resp. to Pl.'s Mot. to File Aff. [80] at 4, n. 4 and Pl.'s Reply in Supp. of Mot. to File Aff. [81].)   Consequently, the amount of Dr. Bergherm's accrued but unvested benefits at the time of his termination was $0.   His termination had no effect whatsoever on the Plan, and the tax consequences of his termination were non-existent.[6]   In suggesting that Dr. Bergherm's termination is nevertheless relevant to the analysis, plaintiff ignores the reason behind the partial termination rule: "to prevent plan terminations motivated by the prospect of a

---

[5]   Plaintiff has filed a motion to submit Dr. Bergherm's affidavit, along with a sur-reply responding to arguments asserted in defendants' reply brief. (Pl.'s Mot. to File Aff. of Bruce Bergherm and Sur-Reply [77].)   The Court **GRANTS** plaintiff's motion, and will consider Dr. Bergherm's affidavit in ruling on defendant's motion for summary judgment.
The parties dispute whether Dr. Bergherm voluntarily retired, or was terminated as a result of the loss of the contract. (See Defs.' Resp. to Pl.'s Mot. to File Aff. and Sur-Reply [80].)   For purposes of this motion, the Court assumes that Dr. Bergherm was terminated contemporaneously with plaintiff, as a result of the loss of the Northside Hospital contract.

[6]   There is no evidence in the record to support plaintiff's assertion that Ms. Mulcay was terminated contemporaneously with plaintiff, or that she was a plan participant.   Accordingly, her termination, assuming it occurred, is not relevant to the partial termination analysis.

15

tax windfall."   *Matz,* 388 F.3d at 573.

Plaintiff's own termination had a similarly minimal effect on the Plan.   As discussed above, plaintiff only participated in the plan for one year--2001.   During that year, plaintiff received $35,000 in contributions. (Defs.' Facts [53] at ¶ .)   At the time of his termination, plaintiff was 40% vested in these contributions. (*See* Compl. [1] at Ex. C.)   The tax "windfall" that resulted from the reversion of 60% of plaintiff's $35,000 contribution was relatively insignificant.

Moreover, there is no evidence that Skaliy, P.C.'s decision to terminate plaintiff was motivated by a desire to reap an unfair tax advantage.   In fact, it is undisputed that the decision was the direct result of Skaliy, P.C.'s loss of a contract to perform anesthesiology services at Northside Hospital. (Defs.' Facts [53] at ¶ 21.)

In opposing summary judgment on this issue, plaintiff relies heavily on a treasury regulation instructing the IRS to base partial termination decisions on "all the facts and circumstances." (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 23.)   According to plaintiff, the application of this regulation renders the partial termination issue "a pure question of fact that cannot be decided on summary judgment." (*Id.*)   Contrary to plaintiff's suggestion, it is not inappropriate to grant summary judgment on a partial termination

16

claim if the relevant facts are not in dispute.  *See Admin. Comm. of the Sea Ray Employees' Stock Ownership and Profit Sharing Plan v. Robinson,* 164 F.3d 981, 989(6th Cir. 1999)(upholding the district court's grant of summary judgment on a partial termination claim) and *Taylor,* 1984 WL 8144 at * 4 (granting summary judgment on plaintiff's partial termination claim).  And, as Judge Posner explained in *Matz,* "the only relevant facts and circumstances [are] the tax motives and tax consequences involved in the reduction in plan coverage." *Matz,* 388 F.3d at 578.   In this case neither of those considerations support a finding of partial termination.

Accordingly, the Court finds that Skaliy, P.C.'s partial termination decision is correct under *de novo* review and should be upheld.   The Court therefore **GRANTS** defendants' motion for summary judgment on plaintiff's claim under ERISA to recover fully vested 2001 benefits.

### C.    Breach of Fiduciary Duties Under ERISA

In Count Two of his Complaint, plaintiff asserts a claim for breach of fiduciary duties under 29 U.S.C. § 1132(a)(1)(A).[7]  (Compl. [1] at ¶¶ 25-29.)  The alleged breach cited in support of plaintiff's

---

[7]    Plaintiff may have intended to cite § 1132(a)(2), which authorizes a civil action to redress the breach of fiduciary duties described in § 1109, or § 1132(a)(3), which authorizes an action to obtain "other equitable relief." *See* 29 U.S.C. § 1132(a)(2) and (3). The controlling law is the same, regardless of the provision under which plaintiff intended to proceed.

17

claim is defendants' "wrongful denial" of ERISA benefits.  (*Id.* at ¶ 27.)  "When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [a claim for benefits under] § [1132](a)(1)(B)."  *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321, 1335 (5th Cir. 1992).  *See also, Byars v. Coca-Cola Co.,* 2004 WL 1595399 *5 (N.D. Ga. 2004)(Thrash, J.) ("Section [1132](a)(1)(B) provides an adequate remedy for the denial of benefits.").  To the extent plaintiff's breach of fiduciary duty claim relies on defendants' "wrongful denial" of ERISA benefits, it is not cognizable under § 1132(a)(1)(A), or § 1132(a)(2) or (3), and should be dismissed.

In response to defendants' motion for summary judgment, plaintiff asserts several new grounds for relief on his breach of fiduciary duty claim.  Specifically, plaintiff claims that defendants breached their fiduciary duties by:  1) improperly calculating plaintiff's income under his employment contract; and 2) committing several procedural errors in their attempt to merge and amend the Plan in the Spring of 2002.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 26-32.)  Neither of these allegations supports a claim for breach of ERISA-imposed fiduciary duties.

With respect to plaintiff's complaints about his compensation, defendants were not acting as ERISA fiduciaries when they negotiated plaintiff's salary and the terms of his employment agreement.  *See*

18

*Cotton v. Massachusetts Mut. Life Ins. Co.,* 402 F.3d 1267, 1277-79 (11th Cir. 2005)(noting that a party is only an ERISA fiduciary "to the extent that it performs a fiduciary function" related to the administration of an ERISA plan) and *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.,* 756 F.2d 1262, 1268 (7th Cir. 1985)("The administrator of a plan is a fiduciary only to the extent he is engaged in administration."). Accordingly, defendants' alleged misconduct in determining plaintiff's compensation does not support a claim for breach of any ERISA-imposed fiduciary duties.

As to defendants' alleged technical errors in merging and amending the Plan, "procedural violations of ERISA must work a substantive harm before relief is available." *Byars,* 2004 WL 1595399 *5 (citing *Harris v. Pullman Standard, Inc.,* 809 F.2d 1495, 1499 (11th Cir. 1987)). Plaintiff suggests that defendants' procedural violations reduced benefit accruals after the attempted merger and amendment of the Plan in the Spring of 2002. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 29-30.) However, as discussed above, plaintiff was not entitled to accrue any benefits at any time during 2002, because he opted out of the Plan effective January 1, 2002. Plaintiff has not identified any other substantive harm that resulted from defendants' alleged procedural violations, or any other ground for relief on his claim for breach of ERISA--imposed fiduciary duties. Accordingly, defendants' motion for summary judgment on

19

Count Two of plaintiff's Complaint is **GRANTED**.

### D.   ERISA Claim for Failure to Provide Information

In Count Three of his Complaint, plaintiff seeks sanctions under 29 U.S.C. § 1132(c)(1) for defendants' alleged refusal to provide information that defendants "are required to furnish pursuant to [§ 1024] of ERISA." (Compl. [1] at ¶¶ 30-33.)   Section 1024 provides that:

[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).   Pursuant to § 1132(c)(1), an administrator who fails or refuses to comply with a participant or beneficiary's request for the above information within 30 days:

may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

Plaintiff admitted in his deposition that he did not know of any document enumerated by § 1024 that he requested but did not receive. (Moody Dep. at 186-88.)   Written correspondence between the parties suggests that defendants complied with all of plaintiff's requests for the specific documents set forth in § 1024. (*See* Defs.' Mot. for Summ. J. [53] at Ex. A.)

20

The basis of plaintiff's claim appears to be a request for various documents that are not specifically enumerated in § 1024, including corporate minutes relating to a Plan merger and amendment, and corporate minutes approving Plan contributions for 2002 and 2003.[8] (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 43.)   Plaintiff claims that he did not receive these documents until 217 days after he requested them.   (*Id.*)   Plaintiff also claims that defendants failed to provide, within 30 days, various documents related to plaintiff's appeal of Skaliy, P.C.'s benefits determination, which are also not enumerated in § 1024, but which are required to be provided by a labor regulation.[9]   (*Id.* at 45.)

The Court concludes that plaintiff's request for the above documents, which are not specifically enumerated in § 1024, does not support a claim for statutory penalties under § 1132(c).   In so holding, the Court rejects plaintiff's broad interpretation of § 1024 as requiring the production of "any documents that affect a

---

[8]   Plaintiff also claims that his receipt of the merged and amended Plan documents was delayed.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 44.)  It is not clear that plaintiff was entitled to these documents under ERISA because he was not a "participant" of the revised Plan.  *See* 29 U.S.C. § 1024(b)(4).  In any case, the Court does not find that the relatively short delay in plaintiff's receipt of these documents warrants a penalty under § 1132(c).

[9]   Plaintiff does not specify how long defendants delayed in providing these documents, or whether he ever received them.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 46.)

AO 72A
(Rev.8/82)

participant's rights or benefits under a plan." (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 43.) The plain language of § 1024(b)(4), which on its face refers to a specific set of documents, does not support plaintiff's interpretation. Neither do applicable rules of statutory construction, which require that penalties be strictly construed. *See Pleasant-El v. Oil Recovery Co., Inc.,* 148 F.3d 1300, 1303 (11th Cir. 1998) and *Ferree v. Life Ins. Co. of N. Am.,* 2006 WL 2025012 at * 4-5 (N.D. Ga. 2006)(Duffey, J.)(strictly construing § 1024(b)(4) to find that it "does not include all of the documents that Plaintiff argues may be 'relevant' or 'pertinent' to a claim"). Accordingly, defendants' motion for summary judgment on Count Three of plaintiff's Complaint is **GRANTED**.[10]   *Accord Ames v. Am. Nat'l Can Co.,* 170 F.3d 751, 758-59 (7th Cir. 1999)(concluding that § 1024(b)(4) reaches only formal legal documents governing a plan) and *Ferree,* 2006 WL 2025012 at * 6 (holding same).

## III. **Plaintiff's State Law Claim for Breach of Fiduciary Duty**

Plaintiff claims that Count Two of his Complaint encompasses, in addition to an ERISA claim, a state law claim for breach of fiduciary duties. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [67] at 34.) This

---

[10]   Having granted summary judgment on Counts 1-3 of the Complaint, there is no basis for Count 4, which asserts a claim for attorneys' fees and expenses under 29 U.S.C. § 1132(g)(1). Accordingly, the Court **GRANTS** defendants' motion for summary judgment on this claim.

AO 72A
(Rev.8/82)

claim is based on Dr. Skaliy's receipt, and alleged diversion, of $945,000 from Northside Hospital in conjunction with the cancellation of a contract to perform anesthesiology services at the hospital. (*Id.* at 38.)

When a federal court has dismissed all of the federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state law claims. *See McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) (citing 28 U.S.C. § 1367(c)(3)). Indeed, the Supreme Court has directed lower federal courts to avoid, "needless decisions of state law," especially when federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Here, the Court has dismissed all of plaintiff's federal claims, and the remaining claim involves a relatively complex decision of state law. Accordingly, the Court **DISMISSES without prejudice** plaintiff's remaining state law claim for breach of fiduciary duty.

## IV.    Plaintiff's Pending Motions to Compel

Plaintiff has two pending motions to compel. (Pl.'s Mot. to Compel Discovery [57]; Pl.'s Mot. to Compel Pension Financial Services, Inc. [62].) Neither motion has any impact on the Court's summary judgment ruling, as the Court will briefly explain.

Plaintiff's motion to compel discovery seeks information related to Dr. Skaliy's negotiations with Northside Hospital in conjunction

23

with the termination of a contract to provide anesthesiology services at the hospital. (Pl.'s Mot. to Compel Discovery [57].)  Apparently, Dr. Skaliy received a substantial amount of money associated with the termination of the anesthesiology contract.  (*Id.* at 2.)  Plaintiff claims that those proceeds should have been transferred to Skaliy, P.C., increasing the "net income" of the business and correspondingly increasing plaintiff's take-home pay.  (*Id.*)

The information plaintiff is requesting has nothing whatsoever to do with his ERISA claim.  As mentioned, Dr. Skaliy did not act as an ERISA fiduciary with respect to the anesthesiology contract with Northside Hospital.  Thus, assuming Dr. Skaliy improperly diverted payments from Northside Hospital to his personal use, he did not do so as an "ERISA fiduciary."  Moreover, Dr. Skaliy's allegedly improper diversion of payments could not have reduced plaintiff's ERISA benefits because, plaintiff having opted out of the Plan effective January 1, 2002, he was not entitled to any additional ERISA benefits at the time of the payment.  While the information may be relevant to plaintiff's state law claim for breach of fiduciary duty, the Court has declined to exercise supplemental jurisdiction over that claim.  Accordingly, plaintiff's motion to compel is **DENIED as moot.**

Plaintiff's remaining motion to compel is directed to Pension Financial Services, Inc. ("PFS"), the third-party administrator for

24

the Plan.  (Pl.'s Mot. to Compel [62].)  Plaintiff served a subpoena on PFS requesting the "entire files relating to the P. Michael Skaliy, M.D., P.C. 401(k) Profit Sharing Plan & Trust and the P. Michael Skaliy, M.D. Money Purchase Pension Plan & Trust."  (*Id.* at 2.)  Plaintiff acknowledges that "PFS has produced many of the documents required by the Subpoena."  (*Id.* at 5.)  However, plaintiff claims that PFS has "selectively withheld certain documents."  (*Id.*)

The record contains absolutely no indication that PFS has withheld any documents.  Indeed, correspondence between plaintiff and PFS reveals quite the opposite:  PFS responded promptly and completely to plaintiff's request for information, exceeding its duties under the subpoena by providing detailed answers to plaintiff's follow-up questions about the relevant files.  (PFS's Resp. to Pl.'s Mot. to Compel [75] at Ex. A.)  When plaintiff expressed his concern that PFS had not produced all relevant documents, PFS offered plaintiff the opportunity to come to PFS's office to personally review the entire original file.  (*Id.* at 6.)  Apparently, plaintiff never availed himself of that opportunity.  (*Id.*)

In short, plaintiff's accusation that PFS has selectively withheld documents is unfounded.  Accordingly, plaintiff's motion to compel PFS to produce additional documents, which by PFS's credible assertion do not exist, is **DENIED.**

AO 72A
(Rev.8/82)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [53], **DENIES** plaintiff's Motion to Compel Discovery [57], **DENIES** plaintiff's Motion to Compel information pursuant to a third-party subpoena [62], **GRANTS** as amended plaintiff's Motions to Seal Documents [66] and [70][11], and **GRANTS** plaintiff's Motion to File Affidavit of Bruce Bergherm and Sur-Reply [77]. The Court also **DENIES WITHOUT PREJUDICE** plaintiff's state law claim for breach of fiduciary duty, which plaintiff may refile in the appropriate state court.

SO ORDERED, this 27 day of March, 2007.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

---

[11]    See page 6 *supra*.

26